[Civ. No. 9048.   Third Dist.   June 7, 1957.]

CALIFORNIA-WESTERN STATES LIFE INSURANCE COMPANY (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION et al., Appellants.

Edmund G. Brown, Attorney General, and Harold B. Haas, Deputy Attorney General, for Appellants.

Downey, Brand, Seymour and Rohwer for Respondent.

VAN DYKE, P. J.—Respondent, as its name implies, is an insurance company doing business as such in this state and elsewhere. It is subject to taxation under the provisions of article XIII, section 14⅘, of the state Constitution. The basis of its annual tax is (in respect to each year) the amount of gross premiums, less return premiums, received in such year "upon its business done in this State." In 1949, the company adopted an employees' retirement plan. No employee was compelled to participate, but those who elected to do so authorized respondent to make monthly deductions from salary or wages due them for service. The state contended that these payroll retentions were gross premiums on business done in the state by respondent and, therefore, assessed the same as

such. Respondent paid the taxes thus imposed, under protest, and brought this action to recover. The trial court gave judgment in the company's favor and the state has appealed.

Respondent's employees' retirement plan, although exactly what its name implies, nevertheless contains so many features and provisions generally found in group annuity policies that the state contends it is, in fact, an insurance contract and, therefore, constitutes insurance business put into effect and continued in this state. We deem this view strained and unrealistic.

Obviously, the plan does contain many features that can be found in group annuity contracts regularly issued by insurers. The same could be said of any comprehensive retirement plan.

This plan provides for elective individual participation by respondent's employees and for withdrawal from participation at the option of the employee, for payment to the company by deduction from pay of a sum of money monthly and for return of such on withdrawal from participation, together with interest at the rate fixed by the plan, compounded annually. While the employee participates, the respondent credits him with monthly retirement credits or retirement units, and if he remains a participant for a stipulated length of time and acquires a stipulated age he will receive retirement pay for life. If, after retirement, his retirement benefits received do not equal before his death his accumulated contributions, plus interest, the balance is paid in cash to his beneficiary. A participating employee may also elect, by larger contributions, to purchase increased retirement benefits. The evidence showed, without conflict, that the employee contributions were markedly lower than amounts which would have to be paid under formal group annuity policies to a company issuing the same, whether paid wholly or partly by employer and employee and that, viewed in this way, employee contributions were not calculated by actuarial methods commonly used in the insurance world. Thus it was shown that where actuaries calculating the premiums on insurance contracts, whether of the life or of the annuity type, consider three elements, namely, the rate of mortality, the rate of interest and the rate of expense, the amount of contributions by respondent's employees was arrived at by nonactuarial methods. For instance, employee contributions varied according to amount of salary or wages earned and to that extent were arbitrary rather than actuarial, and the gap between the cost of the plan and the employee's contributions was thus arbitrarily assumed by respondent as its

contribution. In brief, respondent proposed to any employee who desired to accept the offer that it would pay retirement benefits for a price that must eventuate in loss to respondent, while contenting itself with the imponderable benefits of better employer-employee relationship as compensation for its loss. We think it unnecessary to relate in detail the many provisions of the plan relating to the rights of the participating employees concerning retirement benefits, withdrawal privileges and the like. We would hesitate to say that any considerable number of contract provisions of such nature could not be found in group annuity policies commonly sold by insurers.

The trial court found that the assessment and levy of the protested tax was illegal and void; that the retentions by respondent of a part of wages due participating employees were not premiums received by respondent upon its business done in this state as that term is used in the Constitution; that respondent's employee retirement plan did not and does not constitute an insurance policy or an annuity contract within the meaning of the constitutional provisions as to taxing gross premiums of insurers. We think the trial court arrived at the correct result. Regardless of the noted similarities in so many of the provisions contained in the plan to those found in annuity policies regularly sold by insurers, the great dissimilarity which inheres in the total absence of profit motive —never ignored by successful insurers—compels a conclusion that the establishment and maintenance of respondent's employees' retirement plan cannot be classified as insurance business done by it in this state. Such was not its purpose and such was not its nature. Had this plan been established and maintained by an employer who was not an insurer, we think no one would contend that it was an insurance contract or that its establishment and maintenance constituted the doing of insurance business. The fact that respondent is an insurer is not competent to alter either the purpose or the nature of its employees' retirement plan.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied July 1, 1957, and appellants' petition for a hearing by the Supreme Court was denied July 31, 1957.